**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:22-CV-00001-GNS-HBB**

**LORI RAWLINGS, et al.**                                                                 **PLAINTIFFS**

**VS.**

**HACK MARCUM, et al.**                                                                 **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is the motion of Plaintiffs for an order compelling production of discovery

from Defendant Southern Health Partners, Inc. (DN 63).   On July 18, 2023, the undersigned

conducted an in-person hearing on the motion (DN 100).   Appearing at the hearing were John A.

Elder, IV on behalf of the Plaintiffs, Tess M. Fortune on behalf of the Taylor County Defendants,

and Margaret Jane Brannon on behalf of the Southern Health Partners, Inc.   Defendants.

<u>Nature of the Case</u>

This action arises from the death of Kevin Rawlings, an inmate at the Taylor County

Detention Center ("TCDC").   Rawlings was incarcerated at TCDC for eight days.   During that

time, he allegedly suffered a perforating gastric ulcer which led to his death.   Plaintiffs claim that

Rawlings was denied adequate medical care despite obvious signs that treatment was needed.

In addition to claims against Taylor County, the jailer, and two TCDC employees, Plaintiffs

have also asserted claims against Southern Health Partners, Inc. ("SHP") and a nurse employed by

SHP.   SHP is a private company under contract with TCDC to provide on-site medical services to

inmates.

<u>Production of SHP's Business Policies and Procedures</u>

Plaintiffs have propounded written discovery requests upon SHP.   Included in those

requests was a request for production of SHP's policies and procedures related to the care of

patients, including inmates at TCDC and other detention centers.  The scope of production included policy manuals, training manuals, hiring manuals, as well as any memoranda or policy statements (DN 73-5, PageID # 785, 788).  SHP responded that it would produce the policies and procedures in place at TCDC for the time alleged in the Complaint "upon entry of an appropriate protective order" (Id. at PageID # 789).[1]

SHP provided the Plaintiffs with a proposed agreed protective order.  The proposed protective order would be limited to specifically identified documents or information (*see* DN 73-7 PageID # 976).  Plaintiffs declined to enter into such an order and filed the present motion to compel production of the policies and procedures.  SHP does not dispute that its policies and procedures may be relevant to the Plaintiffs' claims and are therefore discoverable (DN 73 PageID # 744).  It does argue, however, that its policies and procedures are proprietary information which should be protected from dissemination outside this case.

Plaintiffs oppose the imposition of a protective order on several grounds.  First, Plaintiffs argue that SHP cannot establish that public disclosure will result in a "clearly defined and very serious injury" such that the information should be shielded from public knowledge (DN 63-6 PageID # 687).  Plaintiffs also express concern that their experts in this case could find it difficult to compartmentalize the information learned in this case from opinions they might form in other cases.  Plaintiffs further express concern about their potential liability should a non-party entitled to review the information under the protective order subsequently violate the terms of the order.  Finally, Plaintiffs question whether the obligation to destroy any records produced at the

---

[1] Although SHP takes the position that production of the information should be subject to a protective order, SHP did not file a motion for a protective order in response to Plaintiffs' motion to compel.  In the interest of expediency, the undersigned advised the parties at the in-person hearing that the Court would construe SHP's response as having made such a motion.

conclusion of the case could hamper their counsels' ability to defend themselves in the event of a legal malpractice claim.

Federal Rule of Civil Procedure 26(c)(1)(G) provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, by requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.  Thus, to satisfy Rule 26(c)(1)(G), the movant must show that: (1) the interest for which the protection is sought is an actual trade secret or other confidential business information that is protected under the rule; and (2) there is good cause for the entry of the protective order.  Borum v. Smith, No. 4:17-CV-00017-JHM, 2017 U.S. Dist. LEXIS 91127, at *1-2 (W.D. Ky. June 14, 2017) (citing Mitchell v. Home Depot U.S.A., No. 3:11-CV-332, 2012 U.S. Dist. LEXIS 82562, *2 (W.D. Ky. June 14, 2013)).

As the Sixth Circuit has noted, there is a "stark difference" between court orders which preserve the secrecy of proprietary information while parties trade discovery and orders which seal the court's record.  Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co., 834 F.3d 589, 593 (6th Cir. 2016).  The criterion for granting a protective order which restricts dissemination of documents outside the court record has been articulated as follows:

> "As a general rule, pre-trial discovery proceedings are conducted in public unless compelling reasons exist to deny access."  Waelde v. Merck, Sharp & Dohme, 94 F.R.D. 27, 28 (E.D. Mich. 1981).  Pursuant to Rule 26(c), the Court may enter a protective order "for good cause shown" to protect a party by requiring that confidential material not be revealed or be revealed only in a designated manner.  When a business seeks protection of a trade secret or of commercial information under Rule 26(c), it must show that disclosure would cause "clearly defined and very serious injury."  Id.  "[V]ague and conclusory allegations of confidentiality and competitive harm are insufficient.  The movant must make 'a particularized showing that the information sought is confidential' and come forth with 'specific examples' of competitive harm."  Id. (quoting Parsons v. General Motors Corp., 85 F.R.D. 724, 726 (N.D. Georgia 1980)).  In sum, in order to satisfy Rule 26(c), [the

3

movant] must show that (1) the interest for which protection is sought is an actual trade secret or other confidential business information, and (2) there is good cause for the entry of a protective order.

<u>Mitchell</u>, 2012 U.S. Dist. LEXIS 82562, at *4-5.  In support of its argument that the policies and procedures should be subject to a protective order, SHP has offered the affidavit of Jennifer Hairsine, SHP's President and Chief Operating Officer (DN 73-8).  She testified that SHP's policy and procedure manual is based in part on the standards of the National Commission on Correctional Health Care, but SHP has customized various provisions over time, some of which are the result of Ms. Hairsine's attendance at a symposium at which none of SHP's competitors were in attendance (<u>Id.</u>).  "Over time, it has been extensively revised with input from our counsel, our staff, and others based on their collective experience and to keep up with emerging developments" (<u>Id.</u> at PageID # 984).  Some of the staff providing input have been Certified Correctional Health Professionals, a specialized examination-based certification.  Ms. Hairsine also holds the certification.  She notes that correctional healthcare is a highly competitive business with contracts awarded on a bid-basis (<u>Id.</u> at PageID # 985).  Were a competitor or new entry to the market to acquire SHP's policies and procedures, "they would cut out a significant investment of time and resources which could easily be determinative of what organization receives the contract" (<u>Id.</u>).  Moreover, to the extent SHP's policies and procedures are superior to those of any competitor, she opines that it would permit the competitor to provide a higher level of care and negate any advantage SHP holds due to its experience (<u>Id.</u>).  She has outlined the precautions SHP takes to ensure that the documents remain confidential.

Certainly, mere *pro forma* claims that documents are confidential and disclosure would work a competitive harm are insufficient to carry the day.  Rather, the party claiming protection must identify how its policies and procedures are different from other competitors in the market.

4

*See* <u>Borum</u>, 2017 U.S. Dist. LEXIS 91127, at *7.  Here, SHP has explained that, while based upon a national standard, SHP has made unique amendments and supplements to its policies and procedures based upon knowledge gleaned from other professional sources and with the input of employees holding specialized certifications.

It is noteworthy that Plaintiffs chose not to file a reply to SHP's Response to their motion. Consequently, while Plaintiffs' motion sets forth a general discussion of the standard to be met in order to justify protection by order, Plaintiffs have not addressed SHP's specific contentions that disclosure of the documents would work a clearly defined and serious injury.  In the absence of any such rebuttal argument, the undersigned concludes that SHP has made a sufficient showing to justify protection of the policies and procedures.

What form the protective order should take remains unsettled.  SHP presented the Plaintiffs with a draft of a proposed protective order, but state that in so doing they did not indicate that it could not be subject to further discussion or modification.  Plaintiffs expressed concern that their experts could not, essentially, avoid tainting opinions in other cases with information learned in this case.  This is speculation, and Plaintiffs conceded at oral argument that none of their experts had expressed such an opinion.  The undersigned is not aware of any instance in which an expert has learned information in a case subject to a protective order and been unable to separate that information from their knowledge base in respect to opinions in other cases.  On a related note, to the extent Plaintiffs are concerned that someone to whom they disclose information in accordance with a protective order improperly discloses the information outside the litigation, the tendered protective order includes a mechanism to address this.  Experts and consultants to whom the information is disclosed agree to be bound by the terms of the order.  So long as Plaintiffs are themselves compliant with the order, then misconduct by a non-party would only subject that

person to possible contempt sanction. Finally, insofar as Plaintiffs are concerned about destroying part of their litigation file once the case is concluded, and therefore might lack information relative to a possible malpractice action, the order could provide that they may retain the information until the expiration of any applicable statute of limitation. In sum, the undersigned believes that a protective order of the nature proposed by SHP is appropriate.

<u>Privileged Communications</u>

SHP has withheld production of an e-mail string on claim of privilege. It asserts that the e-mails are subject to attorney-client communication and attorney work product privileges. Given that this aspect of Plaintiffs' motion to compel was not significantly addressed by the parties in their original pleadings, they were instructed to file supplemental briefing on the issue. These are filed at DN 101 and 102. At the hearing SHP raised internal investigation as a third-basis for withholding the documents as privileged material. SHP does not discuss this in the supplemental briefing, and the undersigned interprets this as an abandonment of that argument. The undersigned has reviewed the documents in question *in camera*. The e-mail string begins with a communication from Jenese Glasgow, LPN, who was employed by SHP as Kentucky Regional Manager. Her e-mail reporting Mr. Rawlings' death was sent to SHP's general counsel and to several members of SHP's high-level corporate management. She followed up the e-mail with additional facts related to the incident. One of the corporate management recipients and the general counsel posed questions or comments in response to the information.

1. <u>Attorney Client Privilege</u>

As this action does not arise from diversity jurisdiction, the Court looks to federal law to determine the parameters of privilege claims. *See* <u>Reed v. Baxter</u>, 134 F.3d 351, 355 (6th Cir. 1998) (citing Fed. R. Evid. 501). Rule 26(b)(1) of the Federal Rules of Civil Procedure mandates

that privileged matters are afforded an absolute protection from discovery. The attorney-client privilege is available to corporate entities. Burton v. Zwicker & Assocs., PSC, No. 10-227-WOB-JGW, 2012 U.S. Dist. LEXIS 195470, at *4 (E.D. Ky. Jan. 9, 2012). "Corporations act through their agents, and the attorney-client privilege applies to communications between counsel and top management." Moss v. Unum Life Ins. Co. of Am., No. 5:09-CV-209, 2011 U.S. Dist. LEXIS 8635, at *13 (W.D. Ky. Jan. 28, 2011) (citing Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985)). It "is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (citations omitted). The aim of this privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Id.; Hunt v. Blackburn, 128 U.S. 464, 470 (1888). "However, it is not an absolute privilege. It applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." In re Antitrust Grand Jury, 805 F.2d 155, 162 (6th Cir. 1986) (citing Fisher v. United States, 425 U.S. 391, 403 (1975)). Under federal common law, the elements of the attorney-client privilege are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

Reed, 134 F.3d at 355-56 (6th Cir.1998) (citing Fausek v. White, 965 F.2d 126, 129 (6th Cir. 1992)); United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir. 1964)).

The request for advice need not be express, and communications intended to keep the attorney advised of continued developments, with an implied request for legal advice thereon, or self-initiated attorney communications intended to keep the client posted on legal developments

7

and implications may also be protected.  *See* Hercules, Inc. v. Exxon Corp., 434 F. Supp. 136, 144-45 (D. Del. 1977).  Not every communication to or from an attorney is subject to the attorney-client privilege.  Communications not involving legal advice, such as communications seeking business advice, are not protected.  Burton, 2012 U.S. Dist. LEXIS 195470, at *4.  However, where legal consequences of various business options are discussed, the communication is generally considered legal rather than business advice in nature.  *See* In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1037-38 (2d Cir. 1984).  Determining the applicability of the attorney-client privilege is a mixed question of law and fact.  Reed, 134 F.3d at 355-56.

Where in-house counsel[2] is involved, the communications may involve both business and legal considerations.  "Accordingly, the privilege applies to communications with in-house counsel only if the communication's main purpose is to get or give legal assistance."  Burton, 2012 U.S. Dist. LEXIS 195470, at *5.  The peripheral involvement of in-house counsel, such as simply being copied on a communication, does not suffice to demonstrate that the purpose of the communication is that of legal advice.  "What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda."  Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 633 (M.D. Pa. 1997); U.S. Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 163-64 (E.D.N.Y. 1994) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel.").

A review of the e-mail string in this case demonstrates that it does qualify as an attorney-client privileged communication.  Ms. Glasgow notified general counsel and top-management of

---

[2] The attorney is identified as SHP's general counsel.  The undersigned presumes this is synonymous with in-house counsel as her e-mail address is the same as SHP's other corporate employees.

Mr. Rawlings' death and the circumstances surrounding his death.  The clear implication of this notification, the supplemental information she provided, and questions which were posed to her in response were that the communications represent the beginning of SHP's assessment of potential legal exposure in the matter.  The persons included in the communications, in addition to general counsel, all held positions within the corporation relevant to the investigation and assessment of liability.

    2.  <u>Work Product Privilege</u>

Rule 26(b)(3) divides work-product into two categories: "ordinary" work-product and "opinion" work-product.  *See* <u>In re Antitrust Grand Jury</u>, 805 F.2d 155, 163 (6th Cir. 1986).  Ordinary work-product is (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).  "Opinion work-product" is "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).  The work-product doctrine provides ordinary work-product only a qualified protection against discovery, while opinion work-product receives almost absolute protection from discovery.  <u>Roach v. Hughes</u>, No. 4:13-CV-00136-JHM, 2015 U.S. Dist. LEXIS 101660, at *5 (W.D. Ky. Aug. 4, 2015).

The Rule requires that the document be prepared in anticipation of litigation or for trial.  To determine whether a document has been prepared "in anticipation of litigation," and is thus protected work product, the Court must ask two questions: (1) whether that document was prepared because of a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable.  <u>United States v. Roxworthy</u>, 457 F.3d 590, 594 (6th Cir. 2006).  Documents prepared in the ordinary course of

business, pursuant to regulatory requirements, or for other non-litigation purposes are not considered prepared in anticipation, and as a result are not subject to the work product protection. Solis v. Food's Empers. Lab. Rels. Ass'n., 644 F.3d 221, 232 (4th Cir. 2011) (citation omitted). Moreover, the prospect of potential litigation may not be merely speculative.  Roxworthy, 457 F.3d at 594.

SHP argues that the e-mails do not constitute a document prepared in the ordinary course of business as SHP's business is providing medical staffing to local jails and detention centers and not investigating inmate deaths.  Moreover, SHP contends that the inmate population it serves tends to be extremely litigious and, in the event of an inmate death, SHP reasonably foresaw the risk of suit and investigated in light of that potentiality.  SHP acknowledges that such investigations may also serve to improve the quality of inmate care but notes such dual service does not deprive the document of privileged status.

"Simply because an investigation occurs before a suit is filed does not mean that it was not done because of the prospect of litigation." Hines v. Safeco Ins. Co. of Am., No. 3:18-CV-00304-JRW-RSE, 2020 U.S. Dist. LEXIS 160209, at *9 (W.D. Ky. Sept. 20, 2020) (citation omitted).  As SHP observes, if a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection.  Id. at *8.  Here, immediately upon learning of Mr. Rawlings' death, SHP's Kentucky Regional Manager Ms. Glasgow notified SHP's general counsel and top management of the event and began gathering information related to the incident.  She followed up with additional information and responded to questions related to the incident.  This qualifies as ordinary work product subject to protection.  Moreover, the e-mail string concludes with an inquiry from SHP's general counsel which is opinion work product.

10

As to the ordinary work product, Plaintiffs can still obtain disclosure if they demonstrate that they have substantial need for the information and cannot without substantial hardship obtain their substantial equivalent by other means.  Fed. R. Civ. P. 26(b)(3)(B).  Here, the undersigned's review of the e-mails reveals that they contain factual information regarding the "what and when" of Mr. Rawlings' incarceration and medical emergency.  Plaintiffs can obtain this information from the same records and witness' recollections reflected in the e-mails.

3.  <u>30(b)(6) Deposition</u>

As a related matter to the question of the privileged status of the e-mail communications, SHP also raises the issue as to the extent to which its corporate representative can be questioned regarding those communications.  "It stands to reason that, where documents are subject to privilege protection, requiring a Rule 30(b)(6) witness to testify about the corporation's knowledge of the contents of those documents would also be barred by privilege."  <u>Dawkins v. Knight Specialty Ins. Co.</u>, No. 1:20-CV-00091-GNS-HBB, 2021 U.S. Dist. LEXIS 106717, at *11 (W.D. Ky. June 8, 2021); *see also* <u>Schmidt v. Liberty Mut. Fire Ins. Co.</u>, No. 3:21-CV-00501-BJB-LLK, 2022 U.S. Dist. LEXIS 107497, at *6 (W.D. Ky. June 16, 2022).

Attorney's Fees

Plaintiffs have requested an award of attorney's fees in conjunction with their motion to compel pursuant to Fed. R. Civ. P. 37(a)(5).  SHP requests reciprocal relief in its Response (DN 73 PageID # 749).  The motion to compel has been granted in part and denied in part.  Accordingly, Rule 37(a)(5)(C) provides that the court may issue any protective order authorized under Rule 26(c) and *may* apportion the reasonable expenses for the motion.  Here, the parties were engaged in a legitimate disagreement over the production of discovery and the undersigned does not find

11

apportionment of expenses to either party justified.  For this reason, the request for an award of attorney's fees is denied.

## ORDER

**WHEREFORE**, Plaintiffs' motion to compel, DN 63, is **DENIED IN PART and GRANTED IN PART**.  SHP shall produce its business policies and procedures; however, the production shall be subject to a protective order to be agreed to between the parties and submitted to the Court, whereby the documents shall not be disseminated outside this litigation.  The undersigned concludes the e-mail string communication is entitled to privilege under both attorney-client and work product protection.  Plaintiffs are not entitled to question SHP's corporate representative about the contents of the communications.  The request for attorney's fees is denied.

August 24, 2023

H. Brent Brennenstuhl
United States Magistrate Judge

Copies to:      Counsel of Record