UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00001-GNS-HBB

LORI RAWLINGS et al.                                                                                         PLAINTIFFS

v.

HACK MARCUM et al.                                                                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter before the Court on Plaintiffs' Motion for Partial Summary Judgment (DN 153) and Defendants' Motion for Partial Summary Judgment (DN 154). The motions are ripe for adjudication.

### I.  BACKGROUND

On March 8, 2021, Kevin Rawlings ("Rawlings") was booked into the Taylor County Detention Center ("TCDC") following his arrest for several criminal offenses. (Defs.' Mem. Supp. Mot. Partial Summ. J. Ex. 1, at 1, DN 154-2). During the admission process, Rawlings was examined by Karen Redford ("Redford"), a nurse employed by Defendant Southern Health Partners, Inc. ("SHP"), which provided health care services at TCDC. (Keith Dep. 116:10-12, Feb. 13, 2023, DN 154-5; Defs.' Mot. Partial Summ. J. Ex. 3, at 1, DN 154-4). At the time, Rawlings was wearing a neck brace for a broken C2 vertebrae due a December 2020 motor vehicle accident. (Defs.' Mot. Partial Summ. J. Ex. 2, at 1, DN 154-3; Trahant Dep. 39:1-10, DN 154-10; Reiger Report 7, DN 140-5). Rawlings disclosed that he had previously abused alcohol and that he had smoked marijuana daily for more than 25 years. (Defs.' Mot. Partial Summ. J. Ex. 3, at 5-6).

1

On March 15, Desiree Keith ("Keith"), a nurse employed by SHP, was on duty at the TCDC and had her first interaction with Rawlings. (Keith Dep. 45:16-25, 56:25-57:5). During her shift, a TCDC staff member informed Keith that Rawlings was not feeling well. (Keith Dep. 45:13-18, 46:1-7). Keith went to check on Rawlings, who was lying on the ground partially in and out of a cell. (Keith Dep. 45:18-19, 56:11-57:23). According to Keith, she was not aware that Rawlings had fallen and did not ask why he was on the floor.[1] (Keith Dep. 46:24-47:3, 58:5-6). While she did not document it at the time, Keith testified that she checked Rawlings' vitals and blood sugar, and he told her that he was nauseous without any further details. (Keith Dep. 45:18-19, 67:17-21). Keith recalled that Rawlings was coherent and there was nothing else abnormal about his condition. (Keith Dep. 45:21-22). Keith did not notice anything usual about Rawlings' speech and she was able to understand him. (Keith Dep. 68:16-69:5). She told Rawlings to put in a sick call if he continued to have symptoms. (Keith Dep. 45:22-23). In her written statement to the coroner, Keith stated that Rawlings complained of abdominal pain and was not eating. (Keith Dep. 48:9-25; Defs.' Mot. Partial Summ. J. Ex. 5, at 1, DN 154-6). Keith testified that she was unaware of any request from Rawlings to be transferred to a hospital on March 15, and she had no further interaction with Rawlings that day. (Keith Dep. 69:10-19, 81:11-15).[2]

Shortly after Keith began her morning shift on March 16, she received a report from a TCDC staff member that Rawlings was not feeling well. (Keith Dep. 84:5-9). Rawlings was removed from his cell, and Keith spoke with him. (Keith Dep. 84:9-10, 84:18-20). He complained

---

[1] Keith testified that it was not unusual to find an inmate lying in this position. (Keith Dep. 57:19-58:4).

[2] There is some evidence in the record that Rawlings' wife, Lori Rawlings ("Lori"), contacted the TCDC to express concern about Rawlings' condition on or about March 15. (Keith Dep. 39:13-14). Plaintiffs' expert has acknowledged that there is a lack of evidence that Lori spoke to Keith or that Keith was aware of the call. (Trahant Dep. 54:25-55:7).

at the time of abdominal issues and shared that he had undisclosed Suboxone use. (Keith Dep. 84:18-20). Keith testified that withdrawal symptoms can begin seven or eight days after the last use. (Keith Dep. 85:9-16). Keith believed that Rawlings was detoxing from his last Suboxone use prior to incarceration and began treating him accordingly. (Keith Dep. 84:20-22, 85:12-19). Keith did not recall taking Rawlings' vitals and did not immediately document her interaction with him. (Keith Dep. 84:23-85:6). She also did not remember Rawlings exhibiting any difficulty breathing or that any TCDC staff member had conveyed that information to her at the time. (Keith Dep. 97:20-98:1). Keith instructed TCDC staff to take Rawlings to the hospital for clearance[3] and then proceeded to provide medications to other inmates. (Keith Dep. 96:13-18, 123:22-124:1). When she returned about 20 minutes later, she found Rawlings was unresponsive, instructed TCDC staff to call an ambulance, and began CPR. (Keith Dep. 96:13-18; 124:1-3; Trahant Dep. 72:7-10, July 31, 2024, DN 154-10; Reiger Report 10). Rawlings later died at a hospital, and his cause of death was a perforated gastric ulcer with peritonitis. (Pl.'s Mot. Partial Summ. J. Ex. A, at 1, DN 153-2; Goldberg Report 2, DN 139-2; Reiger Report 10; Defs.' Mot. Partial Summ. J. Ex. 6, at 1, DN 157-1)

Plaintiffs Lori Rawlings, Adriene Gaddie as next friend for J.R., a minor child, and Misty Madson, as next friend for J.M., a minor child, (collectively, "Plaintiffs") filed this action in Taylor Circuit Court (Kentucky) arising from Rawlings' death. (Compl., DN 1; 1st Am. Compl. ¶¶ 1-4, 21-22, DN 17). Plaintiffs have asserted claims under federal and state law against, *inter alia*, SHP and Keith (collectively, "SHP Defendants") in her individual and official capacities.[4] (1st Am.

---

[3] SHP staff cannot transport an inmate from a facility. (Mutter Dep. 41:17-21, Feb. 15, 2024, DN 163-4). While SHP staff can call an ambulance, the facility's staff must handle related security issues. (Mutter Dep. 41:17-21).

[4] Plaintiffs' claims against Taylor County Jailer Hack Marcum, TCDC employees Dylan Knifley and Dylan Lile, TCDC, and Taylor County were previously dismissed. (Agreed Order, DN 152).

3

Compl. ¶¶ 7-8, 15-17, 73-121). The matter was then removed to this Court. (Notice Removal, DN 1).

Plaintiffs and SHP Defendants have filed dueling partial motions for summary judgment.[5] (Pls.' Mot. Partial Summ. J., DN 153; Defs.' Mot. Partial Summ. J., DN 154). Plaintiffs seek summary judgment on their claim under Section 1983 for infliction of cruel punishment and their negligence claim. (Pls.' Mem. Supp. Mot. Partial Summ. J. 5-13, DN 153-1). SHP Defendants seek summary judgment on Plaintiffs' Section 1983 claims and state law claims for negligence, and loss of parental consortium, as well as the request for punitive damages. (Defs.' Mem. Supp. Mot. Partial Summ. J. 7-20, DN 154-1).

## II.   JURISDICTION

Federal courts have jurisdiction over actions originating in state court which have been removed to the federal district court in the district and division embracing the place where the action was pending. *See* 28 U.S.C. § 1441(a). The action was brought in Taylor Circuit Court, which is within this Court's district and division. The Court has subject-matter jurisdiction over the action under federal question jurisdiction. *See id.* § 1331. In addition, there is supplemental jurisdiction over the state law claims. *See id.* § 1367(a).

## III.   STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of] show[ing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving

---

[5] While not characterized as such, both are motions for partial summary judgment. Neither motion addresses all claims asserted in the 1st Amended Complaint against SHP Defendants.

4

party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). "The mere existence of a scintilla of evidence in support of the [moving party's] position [is] [] insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Anderson*, 477 U.S. at 252.

## IV.  DISCUSSION

### A.  Count 1:  Section 1983 – Keith

Plaintiffs have alleged that Keith acted with deliberate indifference in providing medical care to Rawlings. (1st Am. Compl. ¶¶ 19, 65-66, 76-77). "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Johnson v. Gibson*, No. 4:19-CV-P174-JHM, 2021 WL 886230, at *3 (W.D. Ky. Mar. 9, 2021) (citing *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001)). Specifically, Plaintiff alleges

5

Keith violated Rawlings' constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. (1st Am. Compl. ¶ 77).

At the time of his death, Rawlings was a pretrial detainee. The Supreme Court has delineated between the rights of pre-trial detainees and sentenced prisoners. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." (citations omitted)). Under the Fourth Amendment, the Supreme Court has held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539.

Plaintiffs have not alleged how Rawlings' incarceration or condition of confinement was unlawful under the Fourth Amendment. In addition, the Fifth Amendment's due process clause applies only to the actions of the federal government and is therefore inapplicable in this case. *See Scott v. Clay Cnty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (citing *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977)). Thus, the Court will focus its analysis on the Eighth and Fourteenth Amendments.

Although "[t]he Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, [] where that claim is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (citation omitted). The Supreme Court has held that "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40

6

(1977) (citation omitted). Because Rawlings was a pre-trial detainee, the proper analysis falls under the Due Process Clause of the Fourteenth Amendment.

Although the Sixth Circuit has "historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric[,]'" this analysis was modified by the Supreme Court's ruling in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018), *abrogated on other grounds by Brawner v. Scott Cnty.*, 14 F.4th 585, 591-97 (6th Cir. 2021); *see also Brawner*, 14 F.4th at 596 ("Given *Kingsley*'s clear delineation between claims brought by convicted prisoners under the Eighth Amendment and claims brought by pretrial detainees under the Fourteenth Amendment, applying the same analysis to these constitutionally distinct groups is no longer tenable."). This analysis has both subjective and objective components. *See Brawner*, 14 F.4th at 591 (citing *Richmond*, 885 F.3d at 937-38).

In *Kingsley*, the Supreme Court modified the subjective component of Section 1983 excessive force claims brought by pretrial detainees under the Fourteenth Amendment. *See Kingsley*, 576 U.S. at 402. Similar to a claim of excessive force, "[a] deliberate-indifference claim under the Eighth Amendment has an objective and a subjective component." *Brawner*, 14 F.4th at 591. The Sixth Circuit has extended the holding in *Kingsley*, modifying the subjective component of the deliberate indifference test for pre-trial detainees bringing Section 1983 claims under the Fourteenth Amendment. *See id.* at 596-97. Thus, the test for deliberate indifference to a pre-trial detainee's medical needs under the Fourteenth Amendment contains: (1) an objective component, which mirrors the objective test under the Eighth Amendment; and (2) a modified subjective component. *See id.* at 591, 596.

To meet the objective test, "a plaintiff must show that the medical need is 'sufficiently serious.'" *Id.* at 591 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The modified subjective test is not as straightforward; however, the Sixth Circuit provides guidance:

> Mere negligence is insufficient. A defendant must have not only acted deliberately (not accidentally), but also recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." A pretrial detainee must prove "more than negligence but less than subjective intent—something akin to reckless disregard."

*Id.* at 596 (internal citation omitted) (citations omitted). The court in the *Brawner* summarized the new standard:

> To meet [the] burden to show that [the] [medical provider] violated [the plaintiff's] constitutional right to adequate medical care, [the plaintiff] need[s] to present evidence from which a reasonable jury could find (1) that [the plaintiff] had an objectively serious medical need; and (2) that [the] [medical provider's] action (or lack of action) was intentional (not accidental) and [] either (a) acted intentionally to ignore [the plaintiff's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [the plaintiff], even though a reasonable official in [the medical provider's] position would have known that the serious medical need posed an excessive risk to [the plaintiff's] health or safety.

*Id.* at 597.

This Court has cautioned against conflating a Section 1983 claim under the Fourteenth Amendment with a claim that is more appropriately brought as a state tort action. *See Browder v. Hopkins Cnty.*, No. 4:22-CV-00065-JHM, 2024 WL 733646, at *3 (W.D. Ky. Feb. 22, 2024) ("Where 'a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second[-]guess medical judgments and to constitutionalize claims which sound in state tort law.'" (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976))). Similarly, a sister court noted that "*Brawner* did not change the principle that mere medical negligence, nor a disagreement between treater and patient as to the better course of treatment, does not equate to a constitutional violation[] under . . . the Fourteenth Amendment."

8

*Vontz v. Hotaling*, No. 2:19-CV-12735, 2023 WL 2881350, at *6 (E.D. Mich. Mar. 6, 2023) (citing *Brawner*, 14 F.4th at 596).

### 1. *Serious Medical Need*

In determining whether SHP or Keith acted with deliberate indifference, the first step in is to determine if Rawlings had an "objectively serious medical need." *Brawner*, 14 F.4th at 597. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015) (citation omitted).

While not addressed in their motion, Plaintiffs contend that Rawlings' perforated gastric ulcer was a serious medical need. (Pls.' Resp. Defs.' Mot. Partial Summ. J. 8, DN 163). SHP Defendants do not challenge this proposition. Regardless, the Sixth Circuit has held that a perforated ulcer constitutes a serious medical need. *See Winkler*, 893 F.3d at 890; *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). Therefore, the first prong of the *Brawner* test is satisfied.

### 2. *Intentional and/or Reckless Conduct*

To satisfy the second prong of the *Brawner* test, Plaintiffs must present evidence that a reasonable jury could find that (1) a defendant's "action (or lack of action) was intentional (not accidental)" and (2) the defendant "either (a) acted intentionally to ignore [Rawlings'] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [Rawlings] . . . ." *Brawner*, 14 F.4th at 597. In their motion, Plaintiffs contend that "Keith acted with deliberate difference to [] [Rawlings'] serious medical needs by failing to escalate care in this matter . . . ." (Pls.' Mem. Supp. Mot. Partial Summ. J. 5).

Plaintiffs point to expert testimony in support of the contention that Keith failed to follow SHP policy. (Pls.' Resp. Defs.' Mot. Partial Summ. J. 15-16). The Sixth Circuit has recognized, however, that a nurse's "failure to follow policy alone is insufficient to support a claim for deliberate indifference." *Mercer v. Athens Cnty.*, 72 F.4th 152, 161 (6th Cir. 2023) (citations omitted). Rather, there must be "'more' in [the] record that pushes [a nurse's] conduct beyond the level of negligence to deliberate indifference." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 315 (6th Cir. 2023) (quoting *Griffith v. Franklin Cnty.*, 975 F.3d 554, 570-71 (6th Cir. 2020)).

Based on the record, a reasonable jury could not find that Keith was deliberately indifferent to Rawlings' medical needs. Plaintiffs have not shown that Keith's actions constitute "intentional ignor[ing]" or "reckless[] fail[ure] . . . to mitigate the risk[,]" as required under *Brawner*. *Brawner*, 14 F.4th at 597. The distinction between inadequate versus an absence of treatment is important, as the Sixth Circuit has stated that "where medical care is merely inadequate, this Court is 'generally reluctant to second guess medical judgments,'" but that "treatment may be constitutionally impermissible when it is 'so woefully inadequate as to amount to no treatment at all.'" *Richmond*, 885 F.3d at 939 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Overall, the record reflects that Keith failed to provide adequate medical care to Rawlings. While the medical care may have been inadequate because Keith acted erroneously based on the belief that Rawlings was in detox due to his disclosure to her of his Suboxone use, any inadequacy in the medical care provided here simply does not meet the reckless standard necessary to support the Section 1983 claim against Keith. *See Browder*, 2024 WL 733646, at *3 ("[F]ederal courts are generally reluctant to . . . constitutionalize claims which sound in state tort law." (internal quotation marks omitted) (quoting *Westlake*, 537 F.2d at 860 n.5)). Keith did provide care to

10

Rawlings—albeit deficient. *See Rouster*, 749 F.3d at 446 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." (quoting *Farmer*, 511 U.S. at 838)).

In particular, the Sixth Circuit has held that "prison medical officials were not deliberately indifferent when they misdiagnosed [] severe ulcers—[] [] which were lethal—as symptoms of drug or alcohol withdrawal." *Griffin v. Franklin Cnty.*, 975 F.3d 554, 573 (6th Cir. 2020) (citing *Winkler*, 893 F.3d at 892-93; *Rouster*, 749 F.3d at 448-51)). In *Winkler*, the on-call nurse at a county detention center determined that the pretrial detainee had symptoms of opiate withdrawal and directed that he be provided medications for the withdrawal and high blood pressure. *See Winkler*, 893 F.3d at 891. In fact, the inmate had a perforated duodenal ulcer and later died due to that condition. *See id.* at 885. As the Sixth Circuit noted in holding the plaintiff failed to prove a Section 1983 claim against a jail nurse:

> [T]his court has made clear that, in order to show deliberate indifference, a plaintiff must allege more than negligence or the misdiagnosis of an ailment. When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. Nor does the failure to follow internal policies, without more, constitute deliberate indifference.

*Id.* (internal quotation marks omitted) (internal citation omitted) (citations omitted).

In *Rouster*, the medical staff employed by a contractor failed to identify properly the symptoms of a pretrial detainee's perforated duodenal ulcer. *See Rouster*, 749 F.3d at 440. The staff instead believed that the inmate was suffering from alcohol withdrawal, even though "he vomited, [] [] ate leftover food from the floor, and [] [] drank from the toilet[]." *Id.* at 449, 451-52. The evidence also reflected a lack of awareness of all of the symptoms experienced by the

11

inmate. *See id.* One staff member attributed the inmate's complaints of stomach pain as gas and diarrhea. *See id.* at 447-48. The Sixth Circuit stated that the "failure to follow best medical practices is not necessarily evidence of deliberate indifference" when the medical staff member is unaware of the serious medical condition causing the symptoms. *Id.* at 449. In affirming the dismissal of the Section 1983 claim, the Sixth Circuit held that the nursing staff was "not deliberately indifferent to [the inmate's] medical needs. No record evidence indicates that any member of the nursing staff ever suspected that [the inmate] was suffering from a more serious condition than alcohol withdrawal." *Id.* at 453.

In this instance, Keith failed to recognize that Rawlings had symptoms of a perforated gastric ulcer, and she failed to follow SHP policies. Such evidence, however, is insufficient to support Plaintiffs' Section 1983 claim against Keith.[6] *See Howell*, 67 F.4th at 315 ("While the Estate is correct that policy dictated Arthur should have checked on Howell every fifteen minutes, and she only checked on him once in roughly 90 minutes, our caselaw states that a failure to follow internal policies, without more, does not equal deliberate indifference." (internal quotation marks omitted) (quoting *Hyman v. Lewis*, 27 F.4th 1233, 1238 (6th Cir. 2022))). Likewise, the fact that Keith should have acted differently with the benefit of hindsight is not evidence that she acted with deliberate indifference in providing care to Rawlings prior to his death. *See Britt v. Hamilton Cnty.*, 531 F. Supp. 3d 1309, 1332 (S.D. Ohio 2021) ("With the benefit of hindsight, it is clear that Britt required additional medical attention on the evening of October 31. Viewing the events of that evening under the proper legal standard, however, the evidence does not give rise to any

---

[6] While the parties also raise arguments about whether there is sufficient proof that Keith's conduct caused Rawlings' injury, it is unnecessary to address this element of the claim for the reasons stated above.

12

inference that any of the NaphCare Nurses acted with deliberate indifference."). Accordingly, SHP Defendants are entitled to summary judgment on Plaintiffs' 1983 claim.

### B. Count 2: Section 1983 – SHP

In their motion, SHP Defendants seek summary judgment on the *Monell* claim asserted against SHP. (Defs.' Mem. Supp. Mot. Partial Summ. J. 15-18). "A private corporation is not liable under [Section] 1983 for torts committed by [] [its] [employees] when such liability is predicated solely upon a theory of *respondeat superior*." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Because Plaintiffs have failed to prove a constitutional violation by Keith, they have no *Monell* claim against SHP arising from Rawlings' death.[7] *See Westmoreland v. Butler Cnty.*, 29 F.4th 721, 731 (6th Cir. 2022) (citation omitted); *Rouster*, 749 F.3d at 453-54. SHP Defendants' motion to dismiss is granted as to the Section 1983 claim asserted against SHP.

### C. State Law Claims

Both summary judgment motions raise arguments relating to some of the state law claims asserted in the Amended Complaint. (Pls.' Mem. Supp. Mot. Partial Summ. J. 10-13; Defs.' Mem. Supp. Mot. Partial Summ. J. 18-20). Because the federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims. *See Rouster*, 749 F.3d at 454 ("Because we have affirmed the grant of summary judgment in favor of the defendants on the

---

[7] Plaintiffs also appear to be asserting a Section 1983 claim against SHP relating to a failure to "train, instruct, supervise, control, discipline or inspect on a continuing basis . . . ." (1st Am. Compl. ¶ 80). In seeking summary judgment, SHP Defendants address this part of the Section 1983 claim against SHP, but Plaintiffs failed to do so in their response. (Defs.' Mem. Supp. Mot. Partial Summ. J. 15-18). Accordingly, to the extent that Plaintiffs have asserted a Section 1983 claim against SHP on this basis, the claim has been abandoned. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." (citations omitted)).

federal-law claims, we conclude that the district court appropriately declined to exercise supplemental jurisdiction over the remaining state-law claims. Rouster may pursue his malpractice and negligence claims in the appropriate state court."). Without any remaining federal claims, it appears that the state law claims are most appropriately referred back to state court for disposition.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiffs' Partial Motion for Summary Judgment (DN 153) is **DENIED**.

2. Defendants' Partial Motion for Summary Judgment (DN 154) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' federal claims against Southern Health Partners, Inc. and Desiree Keith are **DISMISSED WITH PREJUDICE**.

3. Because the Court has dismissed all federal claims in this action, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3), and this matter is remanded to the Taylor Circuit Court.

4. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

June 5, 2025

cc: counsel of record
Taylor Circuit Court Clerk (Civil Action No. 21-CI-00286)